# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

JASON S. VINLUAN,
　　　　　Appellant,

　　　v.

DEPARTMENT OF LABOR,
　　　　　Agency.

DOCKET NUMBER
CH-1221-19-0201-W-1

DATE: July 18, 2024

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Michelle Vinluan</u>, Royal Oak, Michigan, for the appellant.

<u>Edward V. Hartman</u>, Esquire, Chicago, Illinois, for the agency.

### BEFORE

Cathy A. Harris, Chairman
Raymond A. Limon, Vice Chairman
Henry J. Kerner, Member*

*Member Kerner did not participate in the adjudication of this appeal.

### FINAL ORDER

The appellant has filed a petition for review of the initial decision, which dismissed his individual right of action (IRA) appeal for lack of jurisdiction. Generally, we grant petitions such as this one only in the following

---

[1]A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to supplement the administrative judge's finding that the appellant failed to nonfrivolously allege that he made a protected disclosure and address the appellant's other purportedly protected disclosures and activity, we AFFIRM the initial decision.

## BACKGROUND

Until his resignation in March 2017, the appellant was employed by the agency's Bureau of Labor Statistics (BLS) as an Economist in its National Compensation Survey (NCS) program. Initial Appeal File (IAF), Tab 7 at 10, Tab 17 at 4. The NCS program was charged with conducting surveys of employee salaries, wages, and benefits. U.S. Bureau of Labor Statistics, Employee Cost Index, https://www.bls.gov/eci/questions-and-answers.htm (last visited July 18, 2024); *see* 5 C.F.R. § 1201.64 (stating that the Board may take official notice of matters that can be verified); *Graf v. Department of Labor*, 111 M.S.P.R. 444, ¶ 8 (2009) (taking official notice of information on the agency's official website); IAF, Tab 17 at 6.

In the summer of 2012, BLS and the Social Security Administration (SSA) entered into an agreement which led to the establishment of the Occupational Requirements Survey (ORS). Gwyn R. Ferguson et al., BLS, ORS Sample Design Evaluation (Oct. 2014), https://www.bls.gov/osmr/research-papers/2014/pdf/st140130.pdf (last visited July 18, 2024). The purpose of ORS is to collect occupational information relevant to SSA's disability program. *Id.* Several options were proposed on how ORS should be organized under BLS, including one proposal in which ORS would be integrated into the NCS program and another in which it would be left as a separate survey. *Id.*; IAF, Tab 15 at 23.

The appellant believed that ORS should not be integrated into the NCS program. IAF, Tab 15 at 22-23. On July 5, 2013, the appellant raised concerns on an agency webpage, "Your Ideas Count at BLS!," that the integration of ORS into the NCS program would degrade the quality and quantity of data collected for both surveys due to the NCS program's insufficient staffing, and that the integration would lead to greater staffing costs. *Id.* at 21-24. He also filed a grievance in June 2016, regarding the agency's decision not to select him for a promotion. *Id.* at 114-18.

In September 2018, the appellant filed a complaint with the Office of Special Counsel (OSC). IAF, Tab 14 at 8. In his complaint and other correspondence with OSC the appellant alleged that, in retaliation for his disclosures about the integration as well as his grievance, the agency declined to promote him, subjected him to a hostile work environment, and did not rehire him after he resigned. IAF, Tab 1 at 10, Tab 15 at 7, Tab 17 at 16-17.

The appellant filed this IRA appeal after OSC terminated its investigation into his complaint. IAF, Tab 1 at 10. The administrative judge informed the appellant of his burden to establish the Board's jurisdiction over his IRA appeal. IAF, Tab 3. In his initial decision, the administrative judge dismissed the appeal for lack of jurisdiction. IAF, Tab 24, Initial Decision (ID). Specifically, he

found that the appellant failed to nonfrivolously allege that his disclosures were protected. ID at 10-12.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response to the petition, and the appellant has filed a reply. PFR File, Tabs 3-4.

## DISCUSSION OF ARGUMENTS ON REVIEW

To establish jurisdiction in an IRA appeal, an appellant must show by preponderant evidence that he exhausted his administrative remedies before OSC and nonfrivolously allege that (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in a protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D), and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a)(2)(A). *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 6 (2014). A nonfrivolous allegation is an assertion that, if proven, could establish the matter at issue. 5 C.F.R. § 1201.4(s).

<u>The appellant proved exhaustion of his OSC remedies by preponderant evidence.</u>

In an IRA appeal, the Board may consider only matters that the appellant first raised before OSC. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 8 (2011). An appellant may demonstrate exhaustion through his initial OSC complaint, evidence that he amended the original complaint, including but not limited to OSC's preliminary determination letter and other letters from OSC referencing any amended allegations, and the appellant's written responses to OSC referencing the amended allegations. *Id.*

Although the administrative judge acknowledged the appellant filed a complaint with OSC, ID at 2-3, the administrative judge failed to make explicit findings on exhaustion. Here, the appellant's OSC complaint is not in the record. However, he provided a letter from OSC, reflecting that he had filed a complaint and OSC had terminated its inquiry and advising him that he could file an appeal

with the Board. IAF, Tab 1 at 10. He also submitted a declaration under penalty of perjury stating he filed an OSC complaint. IAF, Tab 14 at 3, 8. He further provided documentation he submitted to OSC, including declarations, email correspondence, and "a 700+ page evidentiary package." IAF, Tab 14 at 8-9, Tabs 15-17.

The appellant's evidentiary package included copies of what he numbered as 162 written communications. Of those, he identified approximately 54, including his grievance, which he alleged constituted his protected disclosures and activities.[2] IAF, Tab 15 at 4-16, 18-261. The first of the appellant's alleged protected disclosures occurred on July 5, 2013, and the last occurred on August 3, 2018. *Id.* The appellant's grievance was filed on or about June 27, 2016. *Id.* at 10, 115-17. Because the appellant provided copies of these alleged protected disclosures and activities to OSC, we find that he established exhaustion.

<u>The administrative judge correctly found that the appellant failed to nonfrivolously allege that he made a protected disclosure.</u>

Next, we turn to the issue of whether the appellant made a nonfrivolous allegation of a protected disclosure or protected activity over which the Board has IRA jurisdiction. *See Linder*, 122 M.S.P.R. 14, ¶ 6. A protected disclosure is a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Id.*, ¶ 12. The proper test for determining whether an employee had a

---

[2] On review, the appellant asserts that he also made many oral disclosures. PFR File, Tab 1 at 4. It does not appear that the appellant raised any oral disclosures below, and the administrative judge did not address them. IAF, Tab 14 at 5. In any event, the appellant failed to provide any evidence that he exhausted his OSC remedy as to these alleged oral disclosures, and therefore we decline to address them. IAF, Tab 1 at 10, Tab 15 at 6-16, Tab 17 at 4-5; *See Coufal v. Department of Justice*, 98 M.S.P.R. 31, ¶ 17 & n.1 (2004) (declining to consider whether an appellant nonfrivolously alleged that she made a protected disclosure because she did not exhaust the disclosure before OSC).

reasonable belief that his disclosures were protected is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee could reasonably conclude that the actions evidenced a violation of law, rule, or regulation, or one of the other conditions set forth in 5 U.S.C. § 2302(b)(8). *Id.*

> *The appellant failed to nonfrivolously allege that his communications concerning the integration between ORS and the NCS program were protected.*

Of the 54 written communications identified by the appellant as constituting his disclosures, only 10 of them contain statements he made to others about the proposed integration of ORS into the NCS program.[3] IAF, Tab 15 at 18-39, 42-100, 106-11, 131-37. The first was his July 5, 2013 post on Your Ideas Count at BLS!, in which he asserted that the integration of ORS into the NCS program would, among other things, do the following: (1) "likely increase" staffing costs; (2) negatively impact the quantity and quality of the data that the NCS program collected, including as to ORS; and (3) negatively impact the program's product deliverables and nimbleness. *Id.* at 21-24. Four of the appellant's other communications regarding the proposed integration essentially did nothing more than refer to or quote, in whole or in part, this initial post. *Id.* at 18-19, 44-71. Similarly, the appellant's five remaining communications regarding the proposed integration merely reiterated, at most, points he raised in his initial post. *Id.* at 42-43, 71-100, 106-11, 131-37. Accordingly, these nine other communications about the proposed integration would only be protected to the extent that the appellant's initial post was protected. *See Schneider v. Department of Homeland Security*, 98 M.S.P.R. 377, ¶ 15 (2005) (finding that the

---

[3] The appellant labeled these communications as disclosures D2-D3, D9, D11-D15, D26, and D67. IAF, Tab 15 at 18-39, 42-100, 106-11, 131-37. Although the appellant identified other statements as protected disclosures concerning the integration, the documents he provided did not support his claim. The record does not reflect that he made the written statement he identified as disclosure D83 to anyone. *Id.* at 157-58. Further, the emails he identified as D87 and D134 do not contain any disclosures. *Id.* at 158-60, 213-15.

appellant's disclosures remained protected at each iteration). Thus, although the administrative judge failed to address the nature of these subsequent disclosures or whether they were protected, that error does not establish a basis for granting the petition for review. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision).

The administrative judge found that the appellant's July 5, 2013 disclosure, and by implication his reiterations of this disclosure, was not protected. ID at 10-12. The appellant asserted below that his disclosures evidenced that the integration of ORS into the NCS program would constitute gross mismanagement, a gross waste of funds, and an abuse of authority. IAF, Tab 14 at 5, Tab 17 at 6. He did not argue below or on review that he disclosed a violation of any law, rule, or regulation, or a substantial and specific danger to public health or safety, and we see no reason to find that such wrongdoing is implicated.

On review, the appellant reasserts that he disclosed gross mismanagement, a gross waste of funds, and an abuse of authority. PFR File, Tab 1 at 4, 6-7. We are not persuaded. The whistleblower protection statutes are not a weapon in arguments over policy. *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 8 (2015). General philosophical or policy disagreements with agency decisions or actions are not protected unless they separately constitute a protected disclosure of one of the categories of wrongdoing listed in section 2302(b)(8). 5 U.S.C. § 2302(a)(2)(D); *Webb*, 122 M.S.P.R. 248, ¶ 8. The Board has found a disclosure to be a mere policy dispute when, for example, an appellant disagreed with an agency's proposal to divide one agency unit into three new, smaller subunits. *Id.*, ¶¶ 2, 7-8. Another example of a classic policy dispute is an appellant's disagreement with an agency's decision to close an office, allegedly without justification. *Downing v. Department of Labor*, 98 M.S.P.R. 64, ¶ 2, 14 (2004), *aff'd per curiam*, 162 F. App'x 993 (Fed. Cir. 2006). The appellant's disclosures pertaining to the integration were mere policy disagreements with the

agency's proposal for integration of ORS into the NCS program. Contrary to the appellant's arguments on review, we are not persuaded that the appellant nonfrivolously alleged that a reasonable person in his position would believe he disclosed a gross waste of funds, gross mismanagement, or an abuse of authority.

A gross waste of funds is a more than debatable expenditure that is significantly out of proportion to the benefit reasonably expected to accrue to the Government. *Downing*, 98 M.S.P.R. 64, ¶ 11. As the administrative judge observed, individuals within the agency expressed differing views as to the costs and benefits of the integration. ID at 11; IAF, Tab 15 at 24-28. For example, in response to the appellant's July 5, 2013 posting, one individual expressed the view that ORS should be integrated into the NCS program because it was a "small survey" with "a potentially big source of funding" from SSA. IAF, Tab 15 at 26. Another individual similarly stated that the NCS program had lost significant funding and the funding for ORS could help the NCS program grow. *Id.* at 27. Eight months later, in March 2014, coworkers were still discussing and debating the options. For example, one coworker told the appellant "I can see both sides," while another acknowledged "[t]here are plenty of anecdotes to support both sides, so they cancel each other out." IAF, Tab 16 at 296, 318. Thus, we agree with the administrative judge that the appellant's disclosures did not evidence a gross waste of funds because they concerned management decisions about expenditures that were debatable.

On review, the appellant repeats his statement in his July 5, 2013 posting that "the myriad of costs of tying ORS to the NCS and the resulting inefficiencies are far too great to [the] [NCS] Program, as a whole, and [its] future success." PFR File, Tab 1 at 4; IAF, Tab 15 at 21. To the extent the appellant is arguing that this statement evidenced a gross waste of funds, we disagree. In *Downing*, the Board considered a similar disclosure by an appellant opposing the agency's closure of one of its BLS offices. *Downing*, 98 M.S.P.R. 64, ¶ 9. It observed that the appellant's assertion that the closure was expensive and thus unwarranted was

insufficient because the record contained no evidence of agency expenditures. *Id.*, ¶ 11. Similarly, the appellant's posting generally refers to the costs of the integration, but provides no information suggesting, in financial terms, what these costs might be. IAF, Tab 15 at 21-24. In fact, he disclaimed any specific knowledge of the costs, stating as to staffing and cost issues, "I do not claim to be an expert on such matters (far from it) or privy to the details involved (again, far from it)." *Id.* at 21. We agree with the administrative judge that the appellant's disclosure, even if true, did not evidence a gross waste of funds.

Gross mismanagement means a management action or inaction that creates a substantial risk of significant adverse impact on the agency's ability to accomplish its mission. *Swanson v. General Services Administration*, 110 M.S.P.R. 278, ¶ 11 (2008). A disclosure of gross mismanagement excludes management decisions that are merely debatable. *Webb*, 122 M.S.P.R. 248, ¶ 10 n.3. The appellant indicated in his July 2013 posting that the integration would lead to poor data quality on both ORS and the NCS program's other surveys. IAF, Tab 15 at 22-23. The basis of his concern was that survey respondents would not want to spend the additional time necessary to answer questions for the ORS survey when they were already being asked to answer questions for the NCS program's other surveys. *Id.* The administrative judge found, in essence, that the appellant did not reasonably believe that his disclosure evidenced a substantial risk of significant adverse impact on the agency's mission. ID at 11. We agree.

In *Downing*, the Board found that an appellant failed to meet the nonfrivolous pleading standard as to a disclosure that the agency closed an office without authority and without a cost-benefit analysis, and that closing the office would interfere with the employees' job of collecting data and would make it more difficult to perform the agency's overall mission. 98 M.S.P.R. 64, ¶ 10. The Board reasoned that these assertions were not nonfrivolous allegations of gross mismanagement because they did not demonstrate a management action or inaction that created a substantial risk of significant adverse impact upon the

agency's ability to accomplish its mission. *Id.* Instead, they are no more than the appellant's subjective disagreement with the agency's decision. *Id.*

The appellant's disclosures here were similar to those at issue in *Downing*. He speculated that, "If it takes X amount of time to collect information and respondents are only willing to give a lesser amount of time," the person conducting the survey must abandon "the 'ideal' approach—not asking questions or probing to the extent [he] would under 'ideal' situations," resulting in "cutting corners." IAF, Tab 15 at 22. According to the appellant, such cutting corners would result in "assumptions/judgments" that would cause "data quality . . . [to] suffer." *Id.* As in *Downing*, the appellant's disclosures do not demonstrate a substantial risk of significant adverse impact. Rather, he asserts the agency's actions might result in poorer survey data.

On review, the appellant disputes the administrative judge's characterization of his July 2013 posting as his "personal belief," asserting the posting "contained facts" about the negative effects of merging ORS into the NCS survey. PFR File, Tab 1 at 4; ID at 12. Regardless of any factual basis for the appellant's beliefs, nothing in the appellant's disclosures suggest that the integration would jeopardize the agency's mission. In any event, as discussed above, the effects of the integration were debatable.

The appellant also challenges the administrative judge's finding that his disclosures contained his personal belief by arguing that others agreed with him. For example, he asserts that 17 of his colleagues selected the option to "agree" with his posting, while agency management asked him to delete the post and told him it "would impact his future movement within the government." PFR File, Tab 1 at 5-8; IAF, Tab 15 at 21. A showing that an employee's belief was shared by other similarly situated employees "may be of some relevance" in determining whether his belief was reasonable." *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999). Here, the appellant's colleagues appear to have agreed with him that the agency's actions might result in poorer survey data. *See id.*

However, because the statements in the appellant's posting did not evidence wrongdoing rising to the level of gross mismanagement, the agreement or disagreement of others with his posting does not support his claim that he made a protected disclosure.[4]

An abuse of authority occurs when there is an arbitrary or capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to himself or preferred other persons. *Pasley v. Department of the Treasury*, 109 M.S.P.R. 105, ¶ 18 (2008). There is no de minimis standard for abuse of authority as a basis of a protected disclosure. *Id.*

The appellant did not claim below that anyone involved in the integration was attempting to provide a gain or advantage for himself or others. IAF, Tab 15 at 21-24. At most, he alleged that there was a risk of BLS delivering to SSA something less than "the best product possible in a timely manner." IAF, Tab 15 at 23. Lacking from both his July 2013 posting and his petition for review is a claim that particular individuals' rights were affected or that the integration was for personal gain. *Id.*; PFR File, Tab 1 at 6-7. Thus, he did not disclose an abuse of authority. *See Downing*, 98 M.S.P.R. 64, ¶¶ 2, 12 (declining to find an appellant reasonably believed that his disclosure that a reorganization would disadvantage certain employees as to promotions and reassignments was a disclosure of an abuse of authority).

The appellant also indicates on review that as a part of the proposed integration, field economists were instructed to simplify job descriptions to answer fewer ORS elements or indicate that information was "Not Determinable,"

---

[4] The appellant also points out on review that an OSC attorney advised him via email that his evidence was "sufficient to assume that [OSC] could meet the definition of gross mismanagement." PFR File, Tab 1 at 8-9; IAF, Tab 17 at 16. An IRA appeal is a de novo action, and the Board must therefore rely on its independent analysis of the parties' evidence, and not on OSC's characterizations of the appellant's allegations, which are not binding on the Board. *Cassidy v. Department of Justice*, 118 M.S.P.R. 74, ¶ 16 (2012). Thus, to the extent the appellant is asserting that OSC deemed his disclosures to be protected, we are not bound by any such finding.

which he argues constitutes gross mismanagement. PFR File, Tab 1 at 6. He asserts that BLS wrongfully continued to accept payment from SSA for the collection of information that was hindered or not collected at all. *Id.* at 6-7. He raised similar claims to OSC. IAF, Tab 17 at 7-8. However, neither on review nor in his statements to OSC did he claim he had disclosed this information to the agency. In fact, he states on review that these allegations of wrongdoing "did not go against his initial posting." PFR File, Tab 1 at 7. Thus, he failed to prove he made disclosures of this alleged wrongdoing. *See* 5 U.S.C. § 2302(a)(2)(D) (defining a disclosure as "a formal or information communication or transmission").

> *The appellant's remaining purported disclosures are not a basis for granting the petition for review.*

Below, the appellant additionally referred to communications regarding matters other than the integration. IAF, Tab 15. Although the administrative judge failed to address these communications, we find that error to be harmless because the appellant failed to nonfrivolously allege that they are protected. *See Panter*, 22 M.S.P.R. at 282.

Of the remaining written communications identified by the appellant as constituting his disclosures, a number are emails in which he was merely the recipient, rather the sender, of information.[5] IAF, Tab 15 at 40-41, 111-12, 114-15, 117-20, 124-31, 145-48, 151-57. Because the appellant does not argue that he was retaliated against for another individual's protected disclosure, we need not consider these communications further. *Cf. Duda v. Department of Veterans Affairs*, 51 M.S.P.R. 444, 446 (1991) (finding that it is whistleblower reprisal for an agency to take a personnel action against one person because of his relationship with another employee who has made a protected disclosure).

---

[5] The appellant labeled these communications as disclosures D6-7, D30, D37, D39-40, D44, D47-50, D70, D75, D80, and D82. IAF, Tab 15 at 40-42, 111-12, 114-15, 117-20, 124-31, 145-48, 151-57.

Additionally, we note that the agency informed the appellant on July 9, 2018, at 9:15 a.m. that it had not selected him for a position to which he had applied. IAF, Tab 16 at 239-40. This was the last personnel action identified by the appellant. IAF, Tab 15 at 7-8, 16. He then purportedly made a disclosure later that day, as well as on July 27 and August 3, 2018.[6] *Id.* at 16, 217-61. Because these three purported disclosures followed the last alleged personnel action taken against the appellant, they could not have contributed to any personnel action at issue in this appeal, and we need not consider them further. *See El v. Department of Commerce*, 123 M.S.P.R. 76, ¶¶ 9-10 (2015) (observing that an appellant could not prove contributing factor when the alleged personnel action predated his disclosure), *aff'd per curiam*, 663 F. App'x 921 (Fed. Cir. 2016).

After reviewing the approximately 22 remaining written communications identified by the appellant as disclosures, we see nothing therein indicating that he nonfrivolously alleged they were protected.[7] IAF, Tab 15 at 10005, 112-14, 120-24, 137-45, 148-51, 185-213, 215-17. Notably, these communications do not appear to concern the proposed integration of ORS into the NCS program. Many of these communications constitute the appellant's discussions with union officials about his grievance or vacancies posted within BLS. *Id.* at 111-14, 161-208. In some of the other communications, the appellant discussed with his colleagues such matters as other vacancies or new hires within BLS. *Id.* at 210-13. In any event, the appellant does not re-raise these communications on review, and we see nothing in them indicating that the appellant reasonably believed he was disclosing wrongdoing described in section 2302(b)(8).

---

[6] The appellant labeled these communications as disclosures D151, D158, and D160. IAF, Tab 15 at 217-61.

[7] The appellant labeled these communications as disclosures D17, D34, D41, D68-69, D78, D101, D104-08, D111-16, D119, D121-22, and D147. IAF, Tab 15 at 100-05, 112-14, 120-24, 137-45, 148-51, 185-213, 215-17.

<u>We modify the initial decision to find that the Board lacks jurisdiction over the appellant's claim that he was retaliated against for filing a grievance.</u>

The appellant indicated to OSC that the agency retaliated against him for filing a grievance. IAF, Tab 17 at 5, 12-13. As the administrative judge recognized, in its close out letter OSC acknowledged that the appellant believed management retaliated against him for his union activities. ID at 3; IAF, Tab 1 at 10. In response to the administrative judge's order on jurisdiction, the appellant submitted into the record numerous documents that he had sent to OSC —including a copy of his grievance and communications with his union representative about his grievance. IAF, Tab 15 at 115-17, 138. However, the administrative judge failed to address the appellant's claim that he had been retaliated against for filing a grievance.

An employee engages in protected activity over which the Board has jurisdiction in an IRA appeal when he files a grievance to remedy reprisal for whistleblowing. 5 U.S.C. §§ 1214(a)(3), 1221(a), (e)(1), 2302(b)(9)(A)(i); *Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013). However, the Board does not have jurisdiction over an IRA appeal regarding a claim of retaliation for filing an appeal, complaint, or grievance that does not seek to remedy a violation of section 2302(b)(8), i.e., a claim that does not seek to remedy reprisal for whistleblowing. 5 U.S.C. §§ 1214(a)(3), 1221(a), (e)(1), 2302(b)(9)(A)(ii); *Mudd*, 120 M.S.P.R. 365, ¶ 7; *see Mattison v. Department of Veterans Affairs*, 123 M.S.P.R. 492, ¶¶ 7-8 (2016) (explaining that a claim of reprisal for filing internal agency appeals that did not seek to remedy whistleblowing reprisal arose under 5 U.S.C. § 2302(b)(9)(A)(ii)).[8]

---

[8] Prior to December 12, 2017, the whistleblower protection statutory scheme provided that "cooperating with or disclosing information to the Inspector General of an agency, or the Special Counsel, in accordance with applicable provisions of law," is protected. 5 U.S.C. § 2302(b)(9)(C). The National Defense Authorization Act of 2018, Pub. L. No. 115-91, § 1097(c)(1), 131 Stat. 1283, 1617 (2017), amended section 2302(b)(9)(C) to provide that, in addition to the Inspector General of an agency or the Special Counsel, a disclosure to "any other component responsible for internal investigation or review" is also protected. None of the disclosures the appellant made during the

Here, the appellant's grievance concerned his nonselection for promotion in June 2016. IAF, Tab 15 at 115-17. In his grievance, the appellant alleged that management violated the collective bargaining agreement by failing to interview him for the position and thereby engaged in favoritism. *Id.* at 116. Neither the appellant nor the record indicates that, during the grievance process, he asserted that he was not selected for the position because of any of his disclosures.[9] Because the grievance did not seek to remedy whistleblower reprisal, it falls under 5 U.S.C. § 2302(b)(9)(A)(ii), rather than section 2302(b)(9)(A)(i), and the Board lacks jurisdiction in an IRA appeal to address the appellant's claim that he was retaliated against for filing the grievance. *See Mudd*, 120 M.S.P.R. 365, ¶ 7.

For the reasons stated above, we find that the appellant failed to nonfrivolously allege that he made a protected disclosure or engaged in protected activity, and we conclude that the Board therefore lacks jurisdiction over this appeal. We therefore need not determine all the personnel actions at issue in this appeal,[10] or whether the appellant nonfrivolously alleged that his purportedly protected disclosures or activities were a contributing factor in those personnel actions. Accordingly, we affirm the initial decision as modified herein.

---

grievance process or otherwise were to "any . . . component responsible for internal investigation or review," and his disclosures are therefore not protected under section 2302(b)(9)(C).

[9] In an email to his union representative in October 2016, the appellant referred to whistleblower reprisal statutes. IAF, Tab 15 at 138-39. However, it is unclear whether he intended to communicate that he believed his May 14, 2016 nonselection constituted whistleblower retaliation. *Id.* Regardless, the appellant's grievance had by then already been settled in July 2016. *Id.* at 130-31, 321-24, 334.

[10] The appellant appears to raise on review a claim that his resignation was involuntary. PFR File, Tab 1 at 9. It does not appear he raised this claim with OSC. IAF, Tab 15 at 7-8, 16, Tab 17 at 5. Even if he did, he may be able to file a separate appeal under chapter 75 of any alleged constructive removal. *See Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶¶ 14-17 (2013) (finding that despite raising his within-grade increase (WIGI) denial claim with OSC, the appellant was not precluded from filing a WIGI appeal regarding that claim because his election to proceed before OSC on that claim was not knowing and informed). We make no findings herein regarding the timeliness of, or the Board's jurisdiction over, such an appeal.

**NOTICE OF APPEAL RIGHTS**[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.   5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:

Gina K. Grippando

_____

Gina K. Grippando
Clerk of the Board

Washington, D.C.